IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE HUTCHINSON, | ) | CASE NO. 1:15-cv-1144 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| CAROLYN COLVIN, | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Plaintiff, Charlene Hutchinson ("Hutchinson"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits and Disability Insurance Benefits under Title XVI of the Social Security Act ("Act").  This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this recommendation.

## II.      Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits in February, 2008.  (Tr. 254-267.)  Ms. Hutchinson alleged her disability began on July 1, 2007.  (Tr. 254.)  Ms. Hutchinson's application was denied initially on November 6, 2009 (Tr.120-126) and after reconsideration on April 22, 2010 (Tr.131-136).  On June 3, 2010, Ms. Hutchinson requested an administrative hearing (Tr.137).

A hearing was held before the Administrative Law Judge ("ALJ"), Kurt G. Ehrman, on April 8, 2011.  (Tr. 138.)  The ALJ issued a decision on May 27, 2011, finding that Hutchinson was not disabled.  (Tr. 87-108.)  Hutchinson requested a review of the hearing decision on June 7, 2011 (Tr. 168-169). On December 20, 2012, the Appeals Council vacated ALJ Ehrman's decision (Tr. 109-112).

On remand, ALJ Susan G. Giuffre held a hearing on December 10, 2013 (Tr. 55-80).    In a decision dated January 31, 2014, ALJ Giuffre concluded that Hutchinson was not disabled (Tr. 44).  On March 12, 2014, Hutchinson requested a review of ALJ Giuffre's decision by the Appeals Council (Tr. 14-16).  The Appeals Council denied review, rendering the ALJ's January 31, 2014 decision final (Tr. 1-5).

On June 8, 2015, Hutchinson filed an appeal of ALJ Giuffre's final decision with this court (Doc. 1).  Defendant answered and filed the transcript of the administrative proceedings on August 12, 2015 (Docs. 12 and 13).  Plaintiff filed her brief on the merits on November 22, 2015 (Doc. 16) and Defendant filed its brief on the merits on February 3, 2016 (Doc. 18), making the matter ripe for this court's review.

## III.    Evidence

### A.  Personal, Educational and Vocational Evidence

Ms. Charlene Hutchinson was born on April 10, 1968 and was 39 years old on the date her application was filed.  (Tr. 246)  She has a ninth grade education. (Tr. 59)  Ms. Hutchinson has past relevant work as a housekeeper and a fast food worker.  (Tr. 43)  Ms. Hutchinson worked for various companies for varying periods of time according to her earnings record.  (Tr. 269-274)  A telemarketing firm, Dial America Marketing, Inc., was among her employers. (Tr. 272)

2

### B.  Medical Evidence

#### 1.  Plaintiff's Physical Impairments

Plaintiff presented to Vijay Rastogi, M.D. on July 27, 2007 complaining of right leg pain with occasional weakness but no numbness.  (Tr. 517)  Dr. Rastogi's notes state that plaintiff had positive right straight leg raising test, gait walking favoring the left side and spine tenderness at the right gluteal area.  (Tr. 517)  X-ray imaging of plaintiff's lower back showed mild degenerative changes marked primarily by spurring about the vertebral bodies.  (Tr. 500)

Dr. Rastogi's notes from an office visit on August 13, 2007 state that plaintiff was complaining of pain in right leg but that it was "much better than before, she is walking without much problem."  (Tr. 520)  However, Dr. Rastogi's notes also state that plaintiff is unable to work due to this pain.  (Tr. 520)  Dr. Rastogi diagnosed sciatica and urinary incontinence.  (Tr. 520)  He prescribed Naproxen and physical therapy and told plaintiff to follow-up in eight weeks.  (Tr. 520)

On September 8, 2007, plaintiff went to the emergency room complaining of pain in her back radiating down her right leg with tingling and numbness in her right foot and toes.  (Tr. 468-476)  She rated the pain as a 10/10. (Tr. 470)  Plaintiff's past history included a motor vehicle accident in 2004.  (Tr. 470)  Plaintiff was diagnosed with sciatica and given an injection of Toradol.  (Tr. 469, 473)  Plaintiff went to urgent care on September 21, 2007 and returned to the emergency room on October 10, 2007, with similar complaints.  (Tr. 523, 478-88)

On October 18, 2007, plaintiff requested pain medication for pain in her right leg from a physician at NorthEast Ohio Neighborhood Health Services.  (Tr. 507)

On November 12, 2007, plaintiff had an office visit with Dr. Kausik Roy seeking a referral to on orthopedic physician to treat her sciatica.  (Tr. 568, 685-686)  Plaintiff had an

office visit with an orthopedic physician, Dr. Steven J. Fitzgerald, on December 6, 2007. (Tr. 571) Dr. Fitzgerald's notes state that plaintiff has had ongoing pain in her low back and some right leg numbness since she was in a car accident in 2004.  (Tr. 571) The notes also state the she is not able to stand for long periods and had to quit her job at McDonalds for a desk job because she could not tolerate prolonged standing.  (Tr. 571)  The doctor's notes indicate that plaintiff's lawyer wanted her to seek further evaluation because she was involved in litigation involving the car accident.  (Tr. 571)   Dr. Fitzgerald noted that plaintiff was relatively asymptomatic and neurologically intact.  (Tr. 571)  He recommended that she use NSAIDs for pain management and weight loss.  He also ordered an MRI.  (Tr. 571)   Plaintiff underwent the MRI in December 2007.  (Tr. 491)  The MRI showed an extruded disc fragment at L5-S1, with mild sac compression of the proximal S1 roots, greater on the right. (Tr. 491)  At a follow up appointment, plaintiff indicated that she was not interested in surgical intervention.  (Tr. 573) Dr. Tim Moore referred plaintiff to pain management for conservative treatment.  (Tr. 573)

On December 14, 2007, plaintiff presented at NorthEast Ohio Neighborhood Health Services with pain complaints and requested a refill of her pain medications. (Tr. 511)

On February 1, 2008, plaintiff had a follow up appointment for a urinary tract infection. (Tr. 513)

Also in February 2008, plaintiff continued to complain of lower back pain and reported little relief from her current pain medications.  (Tr. 574)  Dr. Roy's physical examination notes state that plaintiff had pain radiating from her back down her right leg during straight leg raises, but normal straight leg raise on the left.  (Tr. 575)  Plaintiff had no arthritic pain, no joint swelling and no muscle weakness.  (Tr. 575)  She had normal spine range of motion and no spinal or paraspinal tenderness.  (Tr. 576)  Plaintiff displayed 3/5 right lower extremity motor

4

strength and 5/5 left lower extremity motor strength; normal gait; normal and symmetrical reflexes and no motor deficits.  (Tr. 575-576)  She was referred to physical therapy and the pain clinic.  (Tr. 576)

On February 27, 2008, plaintiff presented to Dr. Eugene Lin for evaluation of her lower back pain.  (Tr. 577)  Plaintiff reported that she had experienced low back pain and right leg pain with occasional numbness.  (Tr. 577-578)  She was ambulating with a normal heel to toe gait pattern, but her heel and toe walk was abnormal and she had difficulty toe walking on her right. (Tr. 578)  Plaintiff had mildly decreased range of motion in her back; tenderness but no evidence of spasm or trigger points; and positive straight leg raising test on the right with radicular symptoms.  (Tr. 578)  She displayed normal motor strength in bilateral upper and lower extremities and normal sensation except for right L4-5.  (Tr. 578)  Dr. Lin assessed low back pain, lumbar spasm and mild right S1 radiculopathy. (Tr. 578)  He recommended that plaintiff continue to take NSAIDs and Ultram for pain. (Tr. 578)  He also recommended core strengthening and nutrition for weight loss and that she go to vocational services so that she could get back to work.  (Tr. 578)

On March 18, 2008, plaintiff began physical therapy for her complaints of back pain. (Tr. 665)  At a physical therapy appointment in April 2008, plaintiff reported feeling better with pain medication and rated her pain as a one on a ten point scale.  (Tr. 662)  Her gait was independent without an assistive device and she was independent with all her activities of daily living.  (Tr. 662)  One of the long term goals stated in the physical therapy notes was for plaintiff to be "able to return to work of some sort."  (Tr. 663)

In October 2008, plaintiff went to the emergency department for back, side and abdominal pain. (Tr. 642-644)  She was diagnosed with undifferentiated abdominal pain and was discharged to home in stable condition.  (Tr. 644)

In December 2008, plaintiff reported leaking urine for the past 10 years.  (Tr. 630)  She was diagnosed with urge incontinence and stress incontinence and was prescribed medication for her condition.  (Tr. 632)

In May 2009, plaintiff saw a podiatrist for foot pain. (Tr. 779)  X-rays of plaintiff's feet revealed minimal arthritic changes.  (Tr. 780)  Plaintiff was instructed on doing foot stretches and was advised to wear different shoes.  (Tr. 779)

From July 2009 through November 2009, plaintiff sought treatment for low back pain and sciatica at the Neon Clinic.  (Tr. 831-844)  Plaintiff was prescribed pain medications.  (Tr. 831-844)  In September 2009, plaintiff had positive straight leg raising; lumbar spine tenderness but no other musculoskeletal abnormalities; no sensory loss; no motor weakness; intact balance and gait; and her deep tendon reflexes were preserved and symmetric.  (Tr. 837-838)  In October 2009, plaintiff had posterior tenderness but no paravertebral spasm and negative straight leg raising test. (Tr. 834)  In November 2009, plaintiff had posterior tenderness and paravertebral muscle spasm but was till negative for straight leg raising.  (Tr. 831)  Notes from the Neon Clinic report that plaintiff scored her pain as a zero out of ten in mid-September, October and November of 2009.  (Tr. 831, 833, 836)

Plaintiff went to MetroHealth in September 2009 and reported that pain medication and physical therapy were helping a little.  (Tr. 878)  She also reported that she had pain after minutes of mopping or washing floors.  (Tr. 878)  She denied any incontinence or weakness or numbness in her lower extremities. (Tr. 878)  She had mild spinal tenderness and normal gait.

(Tr. 879)  Lumbar X-rays taken in September 2009 showed transitional vertebra at the lumbosacral junction with some degenerative changes.  (Tr. 876)  Treatment recommendations included physical therapy and pain medication.  (Tr. 880)

Paraspinal tenderness was noted in a doctor's office visit in November 2009.  (Tr. 846) Plaintiff reported continued back pain with radiation of pain to her legs on December 15, 2009. (Tr. 845)  These office notes also indicate that plaintiff had gotten some Percodan from a friend and that those helped a lot.  (Tr. 845)  Plaintiff participated in ten sessions of physical therapy from October 20, 2009 through January 15, 2010. (Tr. 850-883)  She reported some improvement with physical therapy to her physician.  (Tr. 845)

In January 2010, plaintiff went to the emergency room for low back and sciatica pain and reported running out of pain medication.  (Tr. 936)  Office notes from the Neon Clinic in January 2010 indicate that plaintiff was requesting more pain pills.  (Tr. 984)  Plaintiff returned for an office visit on February 4, 2010 with continued low back pain.  (Tr. 943)  She described the pain as constant and throbbing and as being aggravated by standing and bending.  (Tr. 943)  Her right leg was numb at the time and she exhibited decreased motor strength in her right leg during examination.  (Tr. 943-944)  Office notes from February 2010 at the Neon Clinic note that plaintiff cannot work without pain meds and that her lower back pain was under control with medication.  (Tr. 986)  Plaintiff continued to go to the Neon Clinic for medication refills through March 2010.  (Tr. 980-988)

Plaintiff also sought treatment at the Huron Clinic in February and March of 2010.  (Tr. 1004-11)  In February 2010, plaintiff was described as well appearing and in no acute distress. (Tr. 1009)  A physical examination of plaintiff revealed spinal pain to palpation; reflexes were 2+ and symmetrical; motor strength appeared to be normal; diminished sensation of the right leg;

normal range of motion; 4/5 muscle strength; and normal gait.  (Tr. 1009)  In March 2010, plaintiff stated that her pain was "much reduced" and rated her pain level at 2/10 and denied numbness or weakness in any of her limbs.  (Tr. 1005)  The physical examination in March 2010 revealed that plaintiff had normal range of motion; intact muscular strength, normal gait, no back pain to palpation over spine and normal motor and sensory examination.  (Tr. 1006)

In April 2010, a physical examination of plaintiff revealed lumbar tenderness; negative straight leg raising test; and normal sensation, reflexes and strength.  (Tr. 1025-1026)

On May 1, 2010 plaintiff received a bilateral SI joint injection due to her diagnosis of sacroiliitis (Tr. 1019).

On May 14, 2010, Dr. Dennis H. Auckley reviewed a polysomnogram conducted in April 2010 and diagnosed plaintiff with obstructive sleep apnea. (Tr. 1060-1061)  CPAP therapy provided some relief but plaintiff reported only average compliance because the mask was cumbersome and obtrusive.  (Tr. 1100)

On June 8, 2010, plaintiff received another bilateral SI joint injection.  (Tr. 1015)

Plaintiff started treating with Jill Schleifer-Schneggeburger, M.D., a physician associated with the Department of Physical Medicine and Rehabilitation, on July 6, 2010.  (Tr. 1130) Plaintiff requested that Dr. Schleifer-Schneggenburger complete a form titled "Basic Medical" for the Ohio Job and Family Services.  (Tr. 1130)  Plaintiff reported that she had back pain since her 2004 MVA, at which time she was working as a housekeeper.  (Tr. 1130)  Plaintiff also reported that she had to change jobs to sedentary work in telemarketing in 2007 but was unable to tolerate sitting for long periods.  (Tr. 1130)  Plaintiff complained that her lumbar pain increased with standing and sitting for extended periods and was relieved by medication, rest and change of position.  (Tr. 1130)  A physical exam revealed that plaintiff had limited back range of

motion; positive straight leg raising, worse on right but with no reproduction of radicular symptoms; 5/5 muscle strength in the bilateral upper and lower extremities.  (Tr. 1131)  Dr. Schleifer-Schneggeburger noted that plaintiff displayed limited effort due to her pain. (Tr. 1131) Plaintiff was walking in a symmetrical, slightly wide based and slowed gait pattern.  (Tr. 1131) Although plaintiff treated with Dr. Schleifer-Schneggeburger, it does not appear from the record that her treatment lasted for more than the period reflected in the 2010 medical record referred to above.

Plaintiff received a third and final bilateral SI joint injection on August 2, 2010.  (Tr. 1128)

On October 26, 2010, plaintiff received a right L4-5 lumbar translaminal epidural injection due to a diagnosis of thoracic or lumbosacral neuritis or radiculitis.  (Tr. 1096)

Notes from the physical therapist on November 12, 2010 state that plaintiff was reporting severe back pain due to walking too much and that she had cancelled all of her pool therapy appointments due to becoming very sick after last session.   (Tr. 1093)  Plaintiff rated her pain level at 6/10, but had no difficulty with activities of daily living.  (Tr. 1093-1094)  The therapist did not think that plaintiff's physical presentation was consistent with her reported pain level. (Tr. 1094)  Plaintiff was discharged from physical therapy due to a failure of therapy to improve her condition.  (Tr. 1094)

On November 22, 2010, plaintiff received another right L4-5 lumbar translaminal epidural injection.

At a pain management follow-up appointment, plaintiff continued to complain of pain in her back and right leg in January 2011.  (Tr. 1089)

An MRI of plaintiff's lumbar spine was performed on January 26, 2011 and revealed interval partial regression of the extruded disc on the right at L5-S1.  (Tr. 1143)

On February 17, 2011, plaintiff received a right L3, L4 and L5 lumbar medial branch block injection. (Tr. 1087)  On March 1, 2011, plaintiff received a right SI joint injection. (Tr. 1247)  On April 28, 2011, plaintiff received a left SI joint injection. (Tr. 1214)  Plaintiff received a left L3, L4 and L5 lumbar medial branch block injection on the following dates: November 7, 2011, January 3, 2012, May 14, 2012, March 26, 2013, April 26, 2013, June 4, 2013, and September 24, 2013. (Tr. 1164, 1276, 1282, 1465, 1470, 1480, 1622)

Plaintiff continued to seek follow up treatment for back pain, including pain management weight loss, physical therapy, injections and pain medication.  (Tr. 1260-92, 1317-25, 1350-69, 1375-80, 1395, 1406, 1411-57, 1460-90, 1496-1500, 1512-1517, 1540-52, 1558-62, 1573-82, 1585-1628, 1633-1640)  In June 2013, plaintiff complained of continuous aching pain made worse with sitting, standing and walking.  (Tr. 1496)  On examination, plaintiff had back tenderness but bilateral 5/5 strength and normal gait.  (Tr. 1496)

### 2.  Plaintiff's Mental Impairments

Plaintiff was seen for a mental health assessment on March 14, 2008.  (Tr. 580)  She complained of becoming easily agitated since being off medications for depression, of feeling anxious during the day, and of having difficulty sleeping through the night.  (Tr. 580)  Plaintiff was diagnosed with adjustment disorder with depressed mood.  (Tr. 583)

In June 2009, plaintiff underwent a vocational assessment.  (Tr. 783-95)  Following her assessment, Gina LoPresti, M.Ed., CRC, completed a Closure Report.  (Tr. 783-795)  Ms. LoPresti noted that plaintiff was timely but did not attend the community based work assessment as scheduled; she had to leave early one day and called off on her final day.  (Tr. 783)  The

10

report indicates that plaintiff showed adequate job keeping behaviors in all areas observed; completed tasks in a timely manner; always asked for more work when a task was completed; often kept her co-workers on task; and acted as the motivational force of her team.  (Tr. 792-793) One of plaintiff's assets was learning new tasks, and following and retaining instructions.  (Tr. 792)  The report also states that plaintiff had adequate ability to attend to tasks and adequate physical stamina including standing.  (Tr. 793-794)  However, when plaintiff was placed at Goodwill for her community based work assessment she struggled greatly.  (Tr. 784)  She did not use proper procedure in calling off and was unable to tolerate standing.  (Tr. 784)  Ms. LoPresti's report states that plaintiff "eventually ended up need[ing] to make an emergency room visit resulting in an outpatient procedure on her foot."  (Tr. 784)  Plaintiff was not offered continued employment opportunities.  (Tr. 784)  The report states that plaintiff chose to discontinue with vocational programming altogether and is going to apply for disability benefits. (Tr. 784)

### C.  Opinion Evidence

#### 1.  Treating Physician – Dr. Schleifer-Schneggenburger – July 2010

Dr. Schleifer-Schneggenburger completed a basic medical form for plaintiff on July 6, 2010.  (Tr. 1080-1081)  On this form, Dr. Schleifer-Schneggenburger opined that plaintiff's abilities to stand and walk were affected by her medical conditions and that plaintiff would be able to stand or walk for a total of three hours in an eight hour work day and for only 30 minutes without interruption.  (Tr. 1081)  She believed that plaintiff could sit for a total of three hours in an eight hour work day and for one hour without interruption.  (Tr. 1081)  Dr. Schleifer-Schneggenburger further opined that plaintiff would be capable of lifting or carrying up to five pounds frequently and six to ten pounds occasionally.  (Tr. 1081)  Dr. Schleifer-

11

Schneggenburger stated that plaintiff was markedly limited in the ability to push, pull, reach and handle; and was moderately limited in her ability to perform repetitive foot movements.  (Tr. 1081)  Dr. Schleifer-Schneggenburger concluded that plaintiff's back pain limited her tolerance of the functional requirements of jobs and "[g]iven her limited education background, [plaintiff's] employability was dramatically reduced."  (Tr. 1081)

### 2.  Treating Physician – Sheng Liu, M.D. – June 2013

Plaintiff's family physician, Dr. Sheng Liu, completed an assessment about plaintiff's ability to work in June 2013. (Tr. 1458-1459)  Dr. Liu indicated that plaintiff's ability to lift/carry was affected by her impairment and that plaintiff would be limited to lifting 25 pounds occasionally and 15 pounds frequently.  (Tr. 1458)  Dr. Liu also opined that plaintiff's ability to stand and walk would be impacted by her impairment.  (Tr. 1458)  Dr. Liu believed that plaintiff would be able to stand for four hours in an eight hour work day but would be unlimited in her ability to sit.  (Tr. 1458)  Dr. Liu further opined that plaintiff could frequently balance, but could only occasionally climb, stoop, crouch, kneel or crawl.  (Tr. 1459)  Dr. Liu stated that plaintiff was unlimited in her ability to reach, handle, feel, see, hear, and/or speak.  (Tr. 1459)  However, Dr. Liu believed that plaintiff's impairment would affect her ability to push and/or pull due to her low back pain.  (Tr. 1459)  Finally, Dr. Liu indicated that plaintiff was likely to be off task for 25% or more of the time and would likely miss about four days per month due to her impairments.  (Tr. 1459)  Dr. Liu stated that the medical findings of low back pain due to herniated disc supported the postural limitations and the 2011 MRI findings supported the physical function limitations.  (Tr. 1459)

12

### 3.   Consulting Psychologist – Sally Felker, Ph.D. – April 2008

Plaintiff presented to Sally Felker, Ph.D., for a psychological evaluation on April 21, 2008.  (Tr. 593)  Plaintiff reported being depressed and anxious at times.  (Tr. 594)  She also reported recurring pain in her back.  (Tr. 594) Plaintiff also reported interrupted and restless sleep.  (Tr. 594)  Dr. Felker noted pressured speech.  (Tr. 594)  Plaintiff took the Wechsler Adult Intelligence Scale-III with results revealing a full scale IQ of 65.  (Tr. 595)  Dr. Felker opined that plaintiff was functioning at the low borderline level optimally but that her motivation was limited.  (Tr. 596)  Dr. Felker diagnosed plaintiff with chronic pain disorder associated with psychological factors and a medical condition with some depressive symptoms and poly-substance dependence in stable remission, borderline intellectual functioning and antisocial personality disorder.  (Tr. 596)

### 4.   Consulting Psychologist – Dr. Herschel Pickholtz – October 2009

Plaintiff presented to psychologist, Dr. Herschel Pickholtz, on October 22, 2009 for a psychological evaluation.  (Tr. 796)  Plaintiff reported that she last worked at Goodwill for one week in 2009.  (Tr. 798)  Plaintiff stated that the reason she wasn't working was due to her back, legs and feet.  (Tr. 796)  Plaintiff reported that she had been depressed since 2007 related to being rejected at work.  (Tr. 798)  She also stated that she was not motivated and ate too much. (Tr. 798)  Upon examination, plaintiff's ability to recall her long-term memory fell within the low average range.  (Tr. 799)  Her estimated intellectual functioning fell within the extremely low range.  (Tr. 799)  Dr. Pickholtz assessed polysubstance dependence in full-sustained remission, depressive disorder, learning disorder and a personality disorder.  (Tr. 802)

13

### 5.  Reviewing Psychiatrist/Physicians

#### a.  Cindy Matyi, Ph.D.

On May 14, 2008, Cindy Matyi, Ph.D., reviewed plaintiff's file and found mild limitations in activities of daily living and moderate limitations in maintaining social functioning and concentration, persistence or pace.  (Tr. 610)  Dr. Matyi opined that plaintiff should not be expected to adhere to strict production demands or time limits or to cope with frequent change. (Tr. 616)

#### b.  Paul Tangerman, Ph.D. – November 2009

On November 5, 2009, Paul Tangerman, Ph.D., reviewed and affirmed Dr. Matyi's May 14, 2009 opinion.  (Tr. 817-830)

#### c.  Walter Holbrook – May 2008

In May 2008, Walter Holbrook, M.D., a state agency physician, reviewed the record and opined that plaintiff was able to perform a range of light work that entailed standing and/or walking about six hours in an eight hour workday with some postural and environmental limitations.  (Tr. 619)  He also opined that plaintiff could sit for a total of about six hours in an eight hour workday. (Tr. 619)  Dr. Holbrook limited plaintiff's lifting ability to 20 pounds occasionally and 10 pounds frequently.  (Tr.  619)  He also opined that plaintiff could occasionally climb ramps or stairs, could stoop, balance, crouch, or crawl, but could never climb ladders, ropes or scaffolds.  (Tr. 619-620)  He also indicated that plaintiff must avoid even moderate exposure to hazards including machinery or heights. (Tr. 622)

### d.  Willa Caldwell – November 2009

On November 4, 2009, Willa Caldwell, M.D., reviewed and affirmed Dr. Holbrook's May 30, 2009 opinion. (Tr. 804-811)  Dr. Caldwell noted that plaintiff complained of an inability to stand for long periods but that "long" was not quantified and that plaintiff's ability to stand would be affected secondary to "reasonable" pain, but she should be able to stand without use of a cane. (Tr. 809)

### e.  Gerald Klyop – April 2010

On April 20, 2010, Gerald Klyop, M.D., a state agency physician, reviewed the record evidence and affirmed Dr. Caldwell's opinion. (Tr. 1013)

In April 2010, Gerald Klyop, M.D. a state agency physician, reviewed the record evidence and affirmed Dr. Caldwell's opinion.  (Tr. 1013)

## D.  Testimonial Evidence

### 1.  Hutchinson's Testimony

Ms. Hutchinson was represented by counsel and testified at the hearing which took place before administrative law judge ("ALJ"), Susan Giuffre, on December 10, 2013.  (Tr. 57)  Ms. Hutchinson testified that she had a ninth grade education.  (Tr. 59)  She stopped going to high school because she had gotten pregnant.  (Tr. 59)  Plaintiff testified that she has trouble with math and reading and was not able to obtain her GED high school equivalency diploma. (Tr. 59-60)  Plaintiff does not have a drivers' license.  (Tr. 61)  She attempted to get a temporary license a couple of times, but could not pass the written portion of the test.  (Tr. 61)

Plaintiff testified that she had worked at several different McDonalds but could not keep up with the work. (Tr. 64-66)  She also worked at Tower City cleaning tables, emptying trash, sweeping and mopping for approximately six months.  (Tr. 66)  She also testified that she

worked at Goodwill.  (Tr. 67)

Plaintiff has five children, but none of them live with her.  (Tr. 68)  The younger ones were taken from plaintiff because of drug and alcohol abuse and an arson conviction.  (Tr. 68-69)

Plaintiff testified that she lives in an apartment.  (Tr. 69)  She stated that she had a friend who would come over and help her take care of things at her apartment.  (Tr. 69-70)  Plaintiff testified that she was able to do dishes and tried to do other cleaning when her friend was not able to come.  (Tr. 70)  Plaintiff testified that she was unable to do vacuuming and sweeping. (Tr. 70)  Plaintiff stated that she is able to lift a gallon but would not be able to carry it.  (Tr. 74)

Plaintiff testified to wearing a back brace, receiving injections and taking medications for her back pain.  (Tr. 71-72)  Plaintiff testified that these treatments do not relieve her pain.  (Tr. 72)

Plaintiff spends most of her time at home watching TV.  (Tr. 73)  Plaintiff has a few friends who visit her, including the one who helps clean her apartment.  (Tr. 73)

Plaintiff also stated that she was depressed and sometimes could not get out of bed.  (Tr. 74)  She testified to hearing evil voices.  (Tr. 75)  However, when further questioned regarding the voices, plaintiff stated that she was just tired and stays depressed.  (Tr. 75)

### 2.  Vocational Expert's Testimony

Vocational Expert ("VE"), Carol Mosely, testified at the hearing.  (Tr. 75-79)   The VE considered plaintiff's past relevant work to be fast food worker and motel housekeeper.  (Tr. 76)

The VE was asked to consider a person of the claimant's age, education and past relevant work experience with the capacity for light work but with climbing ramps and stairs only occasionally; climbing ladders, ropes and scaffolds never; occasionally balancing, stooping, crouching, and crawling; with the ability to frequently reach overhead bilaterally; the ability to

16

work where there is no requirement to operate foot controls; where there would be the ability to avoid concentrated exposure to hazards defined as industrial machinery, unprotected heights and similar things; the ability to understand and follow instructions for one and two-step tasks; the ability to relate to others on a superficial basis; the ability to adapt to a work setting in which duties are routine and predictable; and the ability to work where there are no strict production demands or time limits, and no frequent changes. (Tr. 77)  Considering these criteria, the VE testified that the person would not be able to perform plaintiff's past relevant work.  (Tr. 77)

However, the VE testified that such a person would be able to perform other jobs, such as packer, with approximately 3,000 jobs available statewide and 800,000 in the national economy. (Tr. 77)  The VE also opined that such an individual could perform work as an inspection worker, with approximately 2,500 jobs available in Ohio and over 550,000 nationally.  (Tr. 78) Finally, the VE testified that such an individual would be able to work as a stock worker, with over 2,000 jobs available in Ohio and 800,000 available in the national economy. (Tr. 78)

The VE testified that an individual would no longer be able to sustain competitive work if they were off task 20% of the time.  (Tr. 78)  She further testified that such an individual would be able to be absent once every couple of months without losing her employment.  (Tr. 78)

## IV.     Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[1]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

---

[1] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

18

V.     **The ALJ's Decision**

The ALJ issued a decision on January 31, 2014.  A summary of her findings is as

follows:

1.  Hutchinson meets the insured status requirements of the Social Security Act
    through September 30, 2012.  (Tr. 23)

2.  Hutchinson has not engaged in substantial gainful activity since July 1, 2007,
    the alleged onset date.  (Tr. 23)

3.  Hutchinson has the following severe impairments: obesity, sleep apnea,
    degenerative changes of the lumbar spine, sciatica, borderline intellectual
    functioning, personality disorder and affective disorder.  (Tr. 23)

4.  Hutchinson does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments.  (Tr.
    23)

5.  Hutchinson has the residual functional capacity ("RFC") to perform light
    work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional
    climbing of ramps/stairs; no climbing of ladders, ropes or scaffolds;
    occasional balancing, stooping, crouching, and crawling; frequently reaching
    overhead bilaterally; in work with no requirement to operate foot controls;
    must avoid concentrated exposure to hazards defined as industrial machinery,
    unprotected heights and similar things.  In addition, she is able to understand
    and follow instructions for one and two-step tasks; is able to relate to others
    on a superficial basis; adapt to a work setting in which duties are routine and
    predictable; and she is able to work where there are no strict production
    demands or time limits and no frequent changes. (Tr. 25)

6.  Hutchinson is unable to perform any past relevant work.  (Tr. 42)

7.  Hutchinson was born on April 10, 1968 and was 39 years old, which is
    defined as a younger individual age 18-49 on the date the application was
    filed. (Tr. 43)

8.  Hutchinson has a limited education and is able to communicate in English.
    (Tr. 43)

9.  Transferability of job skills is not an issue because Ms. Hutchinson's past
    relevant work is unskilled. (Tr. 43)

10. Considering Ms. Hutchinson's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.  (Tr. 43)

Based on the foregoing, the ALJ determined that Hutchinson had not been under a disability from July 1, 2007 through the date of the decision.  (Tr. 44)

## VI.    Parties' Arguments

Plaintiff filed her brief on the merits on November 22, 2015.  (Doc. 16)  Plaintiff argues that the ALJ did not properly apply the regulatory standards used in evaluating the opinions of plaintiff's treating physicians, Dr. Sheng Liu, and Dr. Jill Schleifer-Schneggeburger.  (Doc. 16, p. 11- 17)

Plaintiff acknowledges that the ALJ provided reasons for rejecting portions of Dr. Liu's opinion.  (Doc. 16, p. 12-15)  First, the ALJ stated that she rejected Dr. Liu's opinion that plaintiff had a standing/walking limitation because the claimant had 5/5 or normal strength in both her lower extremities and her gait was normal in June 2013.  Plaintiff contends that the record is full of evidence supporting Dr. Liu's assessment of plaintiff's ability to stand/walk in a job.  (Doc. 16, p. 13-14)  Plaintiff also argues that the ALJ's decision relies heavily on treatment notes rather than on the opinion of Dr. Liu.  (Doc. 16, p. 14)

Secondly, the ALJ rejected Dr. Liu's opinion regarding plaintiff being off task and absent from work. Plaintiff contends that the ALJ improperly relied on the vocational assessment in plaintiff's case record.  (Doc. 16, p. 14- 15)  Plaintiff argues that the opinion of Dr. Liu was entitled to controlling weight over the vocational assessment.  (Doc. 16, p. 14-15)  Plaintiff also points out that the vocational assessment predated Dr. Liu's report by nearly four[2] years.

---

[2] Plaintiff's brief on the merits (ECF Doc. No. 16, Page ID# 1745) characterized the time interval between the vocation assessment and Dr. Liu's evaluation as nearly three years.  Plaintiff's reply brief (ECF Doc.

Plaintiff also argues that the ALJ overlooked portions of the vocational assessment showing that plaintiff would have a huge amount of difficulty in the areas of work tolerance and stamina. (Doc. 16, p. 15)

Plaintiff also contends that the ALJ failed to provide good reasons for rejecting the opinion of Dr. Schleifer-Schneggeburger.  (Doc. 16, p. 15-17)  Plaintiff argues that the ALJ was incorrect in finding that Dr. Schleifer-Schneggeburger relied on plaintiff's subjective complaints. (Doc. 16, p. 16)  Plaintiff argues that Dr. Schleifer-Schneggeburger also reviewed a lengthy treatment history and is a physician specializing in physical medicine and rehabilitation. (Doc. 16, p. 16)  Plaintiff argues that the ALJ did not provide a logical bridge as to why she rejected Dr. Schleifer-Schneggeburger's opinion.  Plaintiff requests that the court vacate and remand this matter back to the Commissioner. (Doc. 16, p. 17)

Defendant filed a brief on February 3, 2016.  (Doc. 18)  Defendant argues that the plaintiff's arguments are not persuasive and should be rejected.  (Doc. 18, p. 11)  Defendant points out that the ultimate determination of whether a claimant is disabled rests with the Commissioner, not the treating physician.  See 20 C.F.R. § 404.1527(d)(1).  Defendant also points out that a treating source's opinion is only entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  Citing 20 C.F.R. 404.1527(c)(2); *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*).

Defendant argues that the ALJ provided good reasons for her decision to reject certain portions of Dr. Liu's opinion.  (Doc. 18, p. 12-13)  Defendant argues that the record demonstrated many instances where examinations of plaintiff returned normal findings which

No. 19, Page ID# 1772) accurately characterized the period as nearly four years.

were inconsistent with Dr. Liu's opinion.  (Doc. 18, p. 13)  Defendant argues that the ALJ

considered the record as a whole and provided good reasons for declining to fully adopt Dr.

Liu's opinion.  (Doc. 18. P. 14)

Defendant also contends that the ALJ provided sufficient explanation as to why she did

not assign controlling weight to the opinion of Dr. Schleifer-Schneggeburger.  (Doc. 18, p. 14-

16)  Defendant argues that the ALJ was not required to credit Dr. Schleifer-Schneggeburger's

opinion which the ALJ concluded understated plaintiff's abilities, was based on plaintiff's

subjective complaints and was inconsistent with the other record evidence.  (Doc. 18, p. 15)

Defendant argues that the ALJ reasonably weighed the opinions of Dr. Liu and Dr. Schleifer-

Schneggeburger in light of the record as a whole.  (Doc. 18. P. 16)  Defendant argues that it was

the ALJ's duty to resolve conflicting evidence and that this court is not permitted to reweigh the

evidence.  (Doc. 18, p. 16)

Defendant also counters plaintiff's argument that the ALJ did not discuss some of the

evidence that supported plaintiff's allegations, such as her participation in physical therapy and

injection treatment. (Doc. 18, p. 16)  Defendant argues that this is not a case where the ALJ

ignored this evidence.  (Doc. 18, p. 16)  Defendant argues that the ALJ may have not cited every

instance of plaintiff's participation in physical therapy or receiving injections but that she was

not required to do so.  (Doc. 18, p. 17)  Defendant cites case law holding that an ALJ can

consider all the evidence without directly addressing in his or her written decision every piece of

evidence submitted by a party.  See *Loral Defense Systems-Akron v. N.L.R.B.* 200 F.3d 435, 453

(6th Cir. 1999).  Defendant requests that the court find that the agency's final decision was

supported by substantial evidence in the record and to enter judgment affirming the final decision

pursuant to 42 U.S.C. § 405(g).

Plaintiff filed a reply brief on February 16, 2016.  (Doc. 19)  Plaintiff restates many of the arguments in her brief on the merits and argues that the defendant did not adequately counter plaintiff's arguments.  (Doc. 19)  Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not follow the treating physician rule in assigning weight to the opinions of plaintiff's treating physicians.  (Doc. 19, p. 4)  The court has considered the parties' arguments and its recommendation is stated below.

## VII.    Law & Analysis

### A.  Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");  *Kinsella v. Schweiker,* 708 F.2d  1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v.*

23

*Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue,* No. 1:09-cv-19822010, 2010 U.S.

Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B.  Treating Physician Rule

Plaintiff argues that the ALJ did not follow the procedural safeguards when she failed to assign controlling weight to the opinion of plaintiff's treating physicians.  The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  In making determinations of disability, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013).  The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If the ALJ does not give the opinion controlling weight, then the opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6).  The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938 ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (July 2, 1996)) (internal quotation marks omitted).

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).  The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

The ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  As the Sixth Circuit has noted,

> [T]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id*. at 377.  On the other hand, the ALJ is not obligated to provide an "exhaustive factor-by-factor analysis."  See *Francis v. Comm'r of Soc. Sec.* 414 Fed. Appx. 802, 804 (6th Cir. 2011).

26

As to Dr. Liu's opinion, the ALJ's decision states the following:

On June 5, 2013, primary care physician Sheng Liu, M.D., completed a form and expressed the opinion that the claimant can lift/carry 15 pounds frequently and 25 pounds occasionally; her ability to sit is not affected by impairment; she can stand/walk for a total of 4 hours of an 8-hour workday; frequently balance and occasionally climb, stoop, crouch, kneel, and crawl;  her ability to push/pull is limited and her ability to reach, handle, and feel is not limited; and she would be "off task" 25% or more of the workday and she would miss about four days of work per month due to impairments or treatment.  With two exceptions, the undersigned gives this assessment considerable weight because it is generally consistent with the record as a whole.  However, while Dr. Liu provides support for the lifting, carrying and postural limitations, he does not provide any findings as to the standing/walking limitation and a pain management note in June 2013 indicates that the claimant had 5/5 or normal strength in both lower extremities and her gait was normal.  The undersigned also finds that Dr. Liu's opinion regarding the claimant's "off task" and absenteeism rates are merely speculative and therefore given little weight.  Furthermore, it is not supported by the vocational assessment.  (Internal citations omitted)

(Tr. 33)  Plaintiff argues that the ALJ failed to comply with the treating physician rule when she rejected Dr. Liu's assessment of plaintiff's standing/walking limitations and when she rejected Dr. Liu's opinion of plaintiff's off task and absenteeism rates.  (Doc. 16)  The court agrees.

The ALJ assigned considerable weight to the opinion of Dr. Liu in all but two respects and articulated her reasoning for departing from Dr. Liu's opinion as stated above.  The ALJ pointed to evidence in the record from the same month Dr. Liu's opinion was formed stating that plaintiff's strength was normal.  And she noted that Dr. Liu's opinion did not cite any medical or diagnostic testing upon which the standing/walking limitations were based.  The ALJ's decision reflects that she considered other evidence and determined that Dr. Liu's opinion concerning the limitations on plaintiff's standing and walking was not consistent with that evidence.  However, the ALJ did not address the length or frequency of the treatment relationship between Dr. Liu and the plaintiff. In a situation such as the one presented here, this failure precludes a claimant from being able to understand why her treating physician's opinion was being discounted.

27

Similarly, the ALJ noted that Dr. Liu's opinion as to plaintiff's "off task" and absenteeism rates was "merely speculative." The ALJ pointed to a nearly four-year-old vocational assessment which showed that plaintiff had adequate job keeping behaviors in all areas observed as a basis for discounting Dr. Liu's opinion regarding the amount of time plaintiff would be off-task. It would appear that the ALJ chose to highlight certain portions of the vocational report while not mentioning others that were consistent with Dr. Liu's opinion. As plaintiff has argued, the report stated: "Charlene was timely, but did not attend the CBWA as scheduled. She had to leave early 1 day and called off on her final day." (Tr. 783) In addition the vocational report appears to substantiate Dr. Liu's assessment of plaintiff's limited ability to stand. In the section headed "Work Tolerance and Stamina," the report stated: "Charlene had a huge amount of difficulty in this area. She was unable to tolerate the standing that was involved in the position and eventually ended up needed [*sic*] to make an emergency room visit resulting in an outpatient procedure on her foot." (Tr. 784)

The vocational report concluded with the following:

> In summary Charlene struggled greatly with the CBWA. As a result she was unable to complete the 2 week assessment as hoped and was not offered a permanent position at Good Will. As a result, it was hoped that Charlene would re-enter job placement service once she recovered, but she chose instead to discontinue with vocational programming altogether. Instead she has determined that she is going to apply for disability benefits and has asked to have her case closed with VocWorks and BVR

(Tr. 784)

Plaintiff's argument that the ALJ improperly used the four-year-old vocational assessment as a basis for discounting the assessment of Dr. Liu is well taken. The absence of any discussion of the length and frequency of Dr. Liu's treatment relationship with plaintiff coupled with the selective reliance upon certain portions of the vocational assessment requires

the conclusion that the ALJ did not provide good reasons for her failure to give controlling

weight to the entirety of Dr. Liu's assessment.[3]

     The court should conclude that the ALJ failed to comply with the requirements of the

treating physician rule with respect to Dr. Liu. This was a critical error given the testimony from

the vocational expert that one who was off-task more than 20% of the time was essentially

unemployable.

     Regarding Dr. Schleifer-Schneggeburger's opinion, the ALJ's decision states:

> Jill Schleifer-Schneggeburger, M.D., of MetroHealth's Physical Medicine and
> Rehabilitation Clinic, completed a "Basic Medical" form about the claimant,
> having last examined the claimant on July 6, 2010.  She opined that the claimant
> could only stand/walk for 3 hours of an 8 hour workday; sit for 3 hours of an 8
> hour workday; lift/carry up to five pounds frequently; is markedly limited in the
> ability to push, pull, reach, and handle; and is moderately limited in her ability to
> perform repetitive foot movements.  Interesting, Dr. Schleifer-Schneggeburger
> also indicated that the claimant's health status is "good/stable with treatment."
> The undersigned gives this assessment little weight because it understates the
> claimant's abilities and is inconsistent with her own statement that the claimant is
> in good health, stable with treatment.  On July 6, 2010, the claimant saw Dr.
> Schleifer-Schneggeburger, for the first time, and for the purpose of getting the
> Basic Medical" completed.  The undersigned also gives it little weight as it is
> apparent from the office notes that Dr. Schleifer-Schneggeburger relied heavily
> on the claimant's subjective complaints and statements that are not supported by
> the record.  For example, the claimant told Dr. Schleifer-Schneggeburger she had
> been working as a housekeeper (work that had been described as work at the
> medium exertional level, see Finding #6), which was too physically demanding
> but she changed jobs in 2007 and instead worked as a telemarketer (a sedentary
> job) which she was still physically unable to do.  There is no evidence that the
> claimant did telemarketing.  In addition, the claimant failed to tell Dr. Schleifer-
> Schneggeburger that she was referred to the Bureau of Vocational Rehabilitation
> in 2008 for assistance in finding a job.  Even though her vocational assessment
> was quite positive, the claimant asked the vocational specialist to close her case
> because she wanted to apply for disability instead.  (Internal citations omitted)

---

[3] Equally troubling is the absence of any discussion by the ALJ of the age of the vocational assessment
she used to discount the opinion of Dr. Liu.  While defendant argues there was no evidence of any change
in the vocational status or abilities of the plaintiff during the intervening four years, the medical records
are replete with a large number of medical procedures and treatments address plaintiff's evolving
condition.

(Tr. 33)

Plaintiff argues that the ALJ erred in not providing good reasons for failing to assign controlling weight to the opinion of Dr. Schleifer-Schneggeburger.  The court agrees.  Although the ALJ did not discuss the length of the treatment relationship between plaintiff and Schleifer-Schneggeburger, it appears from the record that Dr. Schleifer-Schneggeburger completed the basic medical form after plaintiff's first appointment with Dr. Schleifer-Schneggeburger.  Thus, the ALJ's lack of discussion concerning the length of the treatment relationship is an insignificant departure from governing regulations. On the other hand, the ALJ also did not discuss Dr. Schleifer-Schneggeburger's status as a specialist. And the ALJ's conclusion that Dr. Schleifer-Schneggeburger only relied upon the self-report of symptoms by the plaintiff appears inconsistent with her listing of a number of treatment appointments in an attachment to her report. Finally, the ALJ's decision to discount Dr. Schleifer-Schneggeburger's opinions on the ground that she erroneously listed plaintiff's work history is inconsistent with the earnings records showing that plaintiff worked for a telemarketing firm.  (Tr. 274)

Although the ALJ explained her reasons for assigning little weight to the opinion of Dr. Schleifer-Schneggeburger, she did not fully comply with the treating physician rule because the reasons she offered were inconsistent with the factual record. And the absence of any discussion of the significance of Dr. Schleifer-Schneggeburger's status as a specialist in the area of physical medicine and rehabilitation would cause the claimant to have no bridge to understand why her doctor's opinions weren't being considered to be conclusive.

## VIII.  Conclusion

In summary, the court should find that the ALJ failed to properly consider and weigh the medical opinion evidence of treating physicians Dr. Liu and Dr. Schleifer-Schneggeburger, and

30

failed to provide good reasons for her decision not to assign those opinions controlling weight.

As a result, the ALJ's decision cannot be considered to be supported by substantial evidence.

For these reasons, I recommend that the final decision of the Commissioner be VACATED and

that the matter be REMANDED for further proceedings pursuant to 42 U.S.C. § 405(g).


Dated: June 8, 2016                                    s/Thomas M. Parker
                                                       Thomas M. Parker
                                                       United States Magistrate Judge


**OBJECTIONS**
   **Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after being served with a copy of this Report and
Recommendation.  Failure to file objections within the specified time may waive the right
to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See
also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**